J-A04016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: RELINQUISHMENT OF T.T.C.M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.M., FATHER | : : : : : : : : | |
| | : | No. 1153 MDA 2025 |

Appeal from the Order Entered July 15, 2025
In the Court of Common Pleas of Lackawanna County Orphans' Court at
No(s):  2025-00035

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                **FILED: FEBRUARY 27, 2026**

Appellant, T.M. ("Father"), appeals from the order entered in the Lackawanna County Court of Common Pleas, Orphans' Court, which involuntarily terminated his parental rights to Child (born in January 2023).[1] We quash the appeal.

The relevant facts and procedural history of this case are as follows.  At the time of Child's birth, the Lackawanna County Office of Youth and Family Services ("OYFS") was already involved with the family based on dependency cases concerning Child's half-siblings.  Child tested positive for various substances at birth and OYFS obtained an emergency protective order on

---

[1] By order docketed the same day, the court also involuntarily terminated the parental rights of J.R. ("Mother").  Mother timely filed a notice of appeal on August 13, 2025, and this Court affirmed the order terminating Mother's parental rights on December 17, 2025.  *See In re: T.T.C.M.*, No. 1150 MDA 2025 (Pa.Super. filed Dec. 17, 2025) (unpublished memorandum).

January 13, 2023. Child spent one month at the hospital after birth being treated for withdrawal symptoms.

Child was adjudicated dependent on February 13, 2023. Child was also placed with her current foster parents around that same time. On May 22, 2025, OYFS filed a petition for involuntary termination of Mother and Father's parental rights. The court held termination hearings on June 2, 3, 18, and 26, 2025.[2] Following the hearings, the court involuntarily terminated Mother and Father's parental rights by order dated June 26, 2025 and entered on the docket on July 15, 2025. Notably, the certified docket entries indicate that Father was served with the termination order by certified mail on that date and that Father's counsel was served with the termination order by regular mail on that date. Father filed a notice of appeal on August 15, 2025, along with a concise statement of errors per Pa.R.A.P. 1925(a)(2)(i).

Father raises two issues for this Court's review:

> Whether the [Orphans' C]ourt abused its discretion and/or committed an error of law in determining the parental rights of [Father] to the subject minor child should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2).

> Whether the [Orphans' C]ourt abused its discretion and/or committed an error of law in determining the tenets of 23 Pa.C.S.A. § 2511(b) have been satisfied and the best interests of the subject minor child served by terminating the parental rights of [Father].

---

[2] Based on our disposition, we need not summarize the testimony and evidence from the termination hearings here. We note, however, that the Orphans' Court provides a detailed summary of the testimony and evidence adduced at the hearings in its opinion. (**See** Orphans' Court Opinion, filed 8/26/25, at 2-28).

(Father's Brief at 4).[3]

Preliminarily, we must address the timeliness of Father's notice of appeal. The Rules of Appellate Procedure require that the notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). This Court has explained:

> The rule provides of no exceptions. In fact, the rule emphasizes that the filing of a timely notice of appeal is the *sine qua non* of a proper appeal from a final order by stating that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal. ..." This clearly implies that the only failure that **does** affect the validity of the appeal is the failure to file a timely notice of appeal. It is this failure that we have no jurisdiction to excuse.

***Cubano v. Sheehan***, 146 A.3d 791, 794 (Pa.Super. 2016) (emphasis in original) (internal citation omitted).

For purposes of analyzing the timeliness of an appeal, the "date of entry" of an order is "the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties" and "the clerk makes the notation in the docket that written notice of entry of the order has been given as required by [Pa.R.C.P. 236(b)]."[4] Pa.R.A.P. 108(a)-(b).

---

[3] Although Father purports to challenge the termination order under Section 2511(a)(2) and (b), OYFS moved to terminate Father's parental rights under Section 2511(a)(8) and (b). Thus, the court terminated Father's parental rights under Section 2511(a)(8) and (b), not under subsection (a)(2).

[4] Rule 236(b) requires the prothonotary to "note in the docket the giving of the notice[.]" Pa.R.C.P. 236(b).

> Our Supreme Court has held that "an order is not appealable until it is entered on the docket **with the required notation that appropriate notice has been given**." ***Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (emphasis added). Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not started to run. ***Id.*** at 621-22, 735 A.2d at 115. Our Supreme Court has expressly held that this is a bright-line rule, to be interpreted strictly. That the appealing party did indeed receive notice does not alter the rule that the 30–day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given. ***Id.***

***In re L.M.***, 923 A.2d 505, 509 (Pa.Super. 2007) (emphasis in original). ***See also*** Pa.O.C.R. 4.6(a) (requiring Orphans' Court clerk to give immediate notice of order terminating parental rights to counsel for parties or to unrepresented parties directly; mandating that clerk note in docket date when it provided such notice); ***In re Adoption of K.A.F.***, 273 A.3d 1036 (Pa.Super. filed Feb. 8, 2022) (unpublished memorandum)[5] (holding that Pa.O.C.R. 4.6(b) is akin to Pa.R.C.P. 236(b) such that order pursuant to Orphans' Court jurisdiction is entered, for purposes of Rule 903(a), once court official complies with Rule 4.6).

Instantly, the Orphans' Court involuntarily terminated Father's parental rights by order dated June 26, 2025, and docketed on July 15, 2025. The certified docket entries confirm that the termination order was sent to Father by certified mail on July 15, 2025, and sent to Father's counsel by regular mail

---

[5] ***See*** Pa.R.A.P. 126(b) (stating that we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

- 4 -

on that same date.  *See* Pa.R.C.P. 236(b); Pa.O.C.R. 4.6(a); *In re L.M., supra*.  Thus, Father had thirty (30) days from July 15, 2025 to timely file a notice of appeal, making his appeal due on August 14, 2025.  *See* Pa.R.A.P. 903(a).  Nevertheless, Father did not file his notice of appeal until Friday, August 15, 2025, which was one day late.  Under these circumstances, we must quash Father's appeal as untimely.[6]  *See Cubano, supra*.  Accordingly,

_____

[6] Even if we could review Father's issues on appeal, they would not merit relief.  We reiterate that Father's first argument alleges that the court improperly terminated his parental rights under Section 2511(a)(2).  However, the court only terminated his parental rights under Section 2511(a)(8) and (b).  Thus, Father has abandoned on appeal (perhaps by mistake) any challenge to the court's termination order under Section 2511(a)(8).  With respect to Section 2511(b), the Orphans' Court stated:

> [Child] is [in] the only home she has ever known.  All bond witnesses testified [Child] clings to her foster Mother and is very bonded to her foster family.  She needs physical affection and soothing after visits.  She looks for her foster Mother/Father and brother when they leave the room.
>
> The testimony also established Mother and Father share an "emerging bond" with [Child].  [Child] is comfortable and affectionate with them.  The testimony established this is an improvement over past visits.
>
> This court has the difficult task of deciding how best to address the "development, physical, emotional needs and welfare" of [Child.]  This court finds that while it is impossible to interpret [Child's] behavioral changes in terms of why she is behaving in a certain way, … it is clear the lack of permanency is having a negative impact on [Child].  This court is satisfied [Child] will not suffer harm if the bond she shares with Mother and Father is terminated.

*(Footnote Continued Next Page)*

- 5 -

we quash the appeal.

Appeal quashed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2026

---

(Orphans' Court Opinion at 31-32). On this record, we see no error of law or abuse of discretion concerning the court's termination of Father's parental rights under Section 2511(b). *See In re Z.P.*, 994 A.2d 1108 (Pa.Super. 2010) (stating that absent abuse of discretion, error of law, or insufficient evidentiary support for court's decision, termination order must stand).